IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 09-20526-CIV-GOLD/McALILEY
Special Master – Thomas E. Scott

KLAUS HOFMANN,

    Plaintiff,

                          **CASE NO.: 09-20526-CIV-GOLD/MCALILEY**

v.

EMI RESORTS, INC., *et al.*,

    Defendants
    _____/

AUREILO AGUILAR, *et al.*,

    Plaintiff,

                          **CASE NO.: 09-20657-CIV-GOLD/MCALILEY**

v.

EMI RESORTS, INC., *et al.*,

    Defendants.
    _____/

## REPORT AND RECOMMENDATION
## REQUESTING PAYMENT OF FEES AND EXPENSES

This matter is before the Special Master/Monitor *sua sponte* and is filed for the purpose of requesting payment for fees and expenses thus far incurred by the undersigned as well as Kip Rabin (the appointed interim property manager).

    1.    Since the undersigned's involvement in this case following the appointment as Special Master, significant time, expense and resources have been

devoted to carrying out the assigned duties as Special Master, and more recently as Monitor. Since May, 2009 the undersigned has been paid an initial $10,000 ($5,000 from each side) payment as ordered by this Court in the *Interim Order Following Hearing on Preliminary Injunction; Preliminarily Appointing Special Master* **[D.E. 348]**. Thereafter, the undersigned was paid another $12,000 ($4,000 from Plaintiffs and $8,000 from the Defendants) for fees and expenses relating to the first trip down to the Dominican Republic at the end of June, 2009, as ordered by the Court's June 26, 2009 *Interim Order Appointing Special Master* **[D.E. 457]**.

2. However, to date, the undersigned's total unpaid time and expenses exceed $250,000, and the amount continues to accumulate. Mr. Rabin, who was initially retained as the undersigned's forensic accountant and now has been appointed interim manager, has total unpaid time and expenses exceeding approximately $120,000. His time and expenses are also continuing to accrue, especially considering his tireless work these past number of weeks down in the Dominican Republic as interim manager.

3. The available funds to pay for these services, which thus far have been identified, are limited. At present, the source of funds for payment of the above-described services are those which now are held in the undersigned's trust account, in the amount of $299,635. These funds were transferred into the undersigned's trust account by Re/Max Metropolitana, S.A. and/or Melido Marte on Friday, August 21, 2009. Originally, the total funds equaled $322,225 and were held in the *Re/Max Escrow Account in BPD Bank in New York*, account number 151866 (the "Re/Max Trust Account").

4. Those funds were withdrawn by Mr. Marte on July 31, 2009 from the Re/Max Trust Account into his personal account, prior to the entry of the Court's Freeze Order on account 151866 [D.E. 570]. After various Reports and Recommendations and the District Court's orders relating to this issue, an agreement was reached with Re/Max and Mr. Marte to transfer $299,635 of the total $322,225 to the undersigned's trust account. *See, Report and Recommendation* [D.E. 647]. As of the date of transfer, $22,600 remained in the custody of Mr. Marte as that amount related to a Dominican Republic client, Ms. Ana Hernandez, who did not yet provide consent to transfer of her money. This $22,600 is to be placed by Re/Max and Mr. Marte into a new account in the United States that the Court will then be able to freeze.

5. At this time, the undersigned requests payment for his and the manager's services to date, including expenses, which should primarily be paid from the $299,635 in the undersigned's trust account, which represents monies that were either directly or indirectly controlled by or for the Elliott Defendants. However, though the undersigned would like to be paid in full for the services rendered, approximately $109,000 should remain in the undersigned's trust account to be used for ongoing services or needs which may be appropriate to use toward avoiding the foreclosures, if possible.

6. In this regard, and as has been previously recommended, the undersigned recommends that part of the total payment should be borne by the Plaintiffs, or at least the *Aguilar* Plaintiffs, since the Plaintiffs have received a benefit from the undersigned's and the manager's past and ongoing services.

    7.    In the relatively short amount of time that the Special Master has been appointed since later May of 2009 (and later converted to additional, enhanced duties and powers as Monitor), the following has thus far been achieved:

    a.    A complete investigation of the Elliott Defendants' finances has been achieved in large part (subject to additional areas of inquiry), which would not have been achieved through the normal discovery process, especially in consideration of the highly litigious atmosphere of this particular case.

    b.    The discovery process was halted. If it was not halted, normal discovery in this case would have resulted in even greater costs to both sides, which costs the Elliott Defendants clearly could not afford (based upon the books and records thus far uncovered, though additional information is pending). Additionally, the Plaintiffs appear to claim they are becoming financially strapped as well, based upon their prior objections to the recommendation that they pay part of the undersigned's and the manager's fees and costs (which recommendation is made yet again below). For the Plaintiffs if the normal discovery process was not stopped when it was, then they would now be facing further financial straits.

    b.    Monitoring rights and control over the financial affairs of the Cofresi Resort have been obtained. The Cofresi Resort's operations were in a shambles, and while it continues to have difficulty operating, a full understanding of what is due and owing

has been achieved, and a working budget is in the process of being developed to determine if the resort can continue operations;

c. Freezing of certain bank accounts have been achieved, and a return of certain monies as a result thereof (including the majority of the money held and removed by Re/Max);

d. Unfettered access to available Elliott Defendants' records has been obtained and forensic investigation is proceeding in relative short order;

e. Real-time reporting is now available as to the financial condition and wherewithal of the Elliott Defendants and specifically the Cofresi Resort;

f. Negotiations and discussions have occurred with at least Banco Leon, as it relates to the Cofresi Resort, though the results of which are presently unknown. What is known is that Banco Leon had no further interest in dealing with the Elliotts if they remained as management of the Cofresi Resort and likely would have not undertaken any discussions or considerations to avoid foreclosure if the undersigned and the manager did not step in;[1]

Accordingly, it is hereby requested and recommended as follows:

1. The undersigned requests partial payment for his services and expenses to date in the amount of $180,000. Upon further order of the Court, the

---

[1] By making this statement, the undersigned is not stating that Banco Leon has agreed to delay anything or that the bank has agreed to any potential proposal; rather, the statement is only that the bank was willing to try and discuss matters with the undersigned and the manager, whereas it was wholly unwilling to undertake any serious discussions with the Elliott Defendants.

undersigned will submit the appropriate invoices to the Court for the Court's *in camera* review and approval.

2. The undersigned further requests partial payment for the services and expenses of the manager to date, in the amount of $60,000. Upon further order of the Court, the manager will submit the appropriate invoices to the Court for the Court's *in camera* review and approval.

3. It is recommended that this $240,000 total payment (to the undersigned and the manager) be paid from the following sources:

    i. $190,000 from the $299,635 in the undersigned's trust account, as wire-transferred by Re/Max and Mr. Marte on August 21, 2009; and,

    ii. $50,000 to be paid by the Plaintiffs, or at least the *Aguilar* Plaintiffs.

RESPECTFULLY SUBMITTED in Miami, Florida this 26 day of August, 2009.

_____
SPECIAL MASTER THOMAS E. SCOTT

Copies furnished to:
U.S. District Judge Alan S. Gold
Counsel of record